No. 104,951

MARTHA FERNANDEZ, *Claimant/Appellee*, v. McDONALD'S, *Respondent/Appellant*, and KANSAS RESTAURANT & HOSPITALITY ASSOCIATION SELF-INSURANCE FUND, *Insurance Carrier/Appellant*.

(292 P.3d 311)

Opinion filed January 25, 2013.

*Wade A. Dorothy*, of The Dorothy Law Firm LLC, of Overland Park, argued the cause and was on the briefs for appellants.

*Conn Felix Sanchez*, of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: McDonald's and its workers compensation carrier, Kansas Restaurant & Hospitality Association Self-insurance Fund (hereafter collectively referred to as McDonald's), appeal the portion of the order of the Kansas Workers Compensation Board (Board) that awarded Martha Fernandez a 59 percent work disability. McDonald's claims it was error for the Board to assign a work disability rating to a person who would be designated an unauthorized alien under 8 U.S.C. § 1324a(a)(2) (2012), because such a person cannot legally return to work in the United States. Applying the Workers Compensation Act (Act) as it is written, we affirm the Board's award of work disability.

## FACTS AND PROCEDURAL BACKGROUND

On August 4, 2007, Fernandez was working at a McDonald's restaurant in Topeka, Kansas, when she injured her lower back while lifting a box of meat. She received medical treatment the

same day. Fernandez was restricted to light duty and subsequently returned to work for 3 hours a day in an accommodated position.

After McDonald's submitted an accident report form to the Division of Workers Compensation, the agency informed McDonald's that Fernandez' Social Security number was invalid. Fernandez did not comply with her employer's request to present a copy of her Social Security card, and eventually Fernandez stopped coming to work. During the course of the workers compensation proceedings, Fernandez' unauthorized alien status was confirmed; she had no legal authority or documentation to work in the United States.

The administrative law judge (ALJ) determined and awarded Fernandez a functional impairment of 7 percent permanent partial disability. But the ALJ denied the claim for permanent partial general work disability under K.S.A. 44-510e based upon public policy grounds. The ALJ opined that the purpose of the Act was to assist injured workers to return to work; that an unauthorized alien cannot legally return to work in the United States; and that, therefore, awarding an unauthorized alien a work disability would be inconsistent with legislative intent.

Fernandez filed an application for review by the Board, and a majority concluded that the Act's plain language did not prohibit an unauthorized alien from receiving an award for work disability. Accordingly, the Board majority found that Fernandez was entitled to the full measure of work disability described in K.S.A. 44-510e and calculated that she should be awarded a 59 percent work disability.

The one dissenting board member pointed to the statement in K.S.A. 44-510g(a): "A primary purpose of the workers compensation act shall be to restore the injured employee to work at a comparable wage." The dissenter noted that because Fernandez' immigration status prohibits her from returning to work in this country, the legislative purpose of the Act is a legal impossibility. The apparent suggestion of the dissent was that declining to award work disability to an unauthorized alien conformed to the statutory language of K.S.A. 44-510g(a).

McDonald's appealed the Board's decision to the Court of Appeals. We granted McDonald's motion to transfer the case. To

clarify, McDonald's does not contest either the award of or the amount of benefits payable to Fernandez for her functional disability. The only issue in this appeal is whether an employee's immigration status can preclude that person from ever being awarded benefits for work disability under K.S.A. 44-510e. On that issue, we agree with the Board majority's plain language construction of the Act and affirm the Board's award of work disability compensation.

### WORK DISABILITY FOR UNAUTHORIZED IMMIGRANTS

McDonald's presents this appeal as an issue of statutory construction. It contends that the Board interpreted K.S.A. 44-510e in isolation instead of construing the entire Act as a whole, including its stated purpose. We agree that the answer to McDonald's work disability challenge lies within the Act.

*Standard of Review*

Final orders of the Board are subject to review under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* K.S.A. 2011 Supp. 44-556(a). The standard of review will vary depending on the issue raised. See K.S.A. 2011 Supp. 77-621. This court may grant relief if we determine that the agency erroneously interpreted or applied the law. K.S.A. 2011 Supp. 77-621(c)(4). That issue is reviewed de novo. *Tyler v. Goodyear Tire & Rubber Co.*, 43 Kan. App. 2d 386, 388, 224 P.3d 1197 (2010). Moreover, we need not give deference to an agency's interpretation of a statute; rather, we exercise unlimited review. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010).

*Analysis*

As a preliminary matter, we will quickly dispose of Fernandez' claim that McDonald's failed to exhaust its administrative remedies. The supporting argument appears to be that McDonald's argued new legal issues for the first time on appeal, *i.e.*, that the issues were not preserved for appeal. Fernandez' argument is misplaced and unavailing. McDonald's March 22, 2010, submission letter and brief to the Board contained the allegation that Fernandez' "status as an illegal alien precluded an award on any basis other

than functional impairment." Moreover, the Board's order recited that the employer "disputes claimant's entitlement to any award beyond her whole person functional impairment as claimant is not in this country legally. Therefore, no work disability can be awarded." McDonald's clearly raised before the Board the very issue it is asking us to decide. We have neither a preservation nor an exhaustion of remedies problem here.

Turning to the merits, we first note that the work disability to which the parties refer in this appeal is perhaps more accurately described as the permanent partial general disability computation described in K.S.A. 44-510e(a). When the claimant was injured in 2007, the relevant portion of K.S.A. 44-510e(a) stated as follows:

"Permanent partial general disability exists when the employee is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d and amendments thereto. The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury. In any event, the extent of permanent partial general disability shall not be less than the percentage of functional impairment. . . . An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

In other words, the calculation of permanent partial general disability payments under workers compensation depends upon the extent to which the work injury has reduced the worker's ability to perform his or her preinjury work tasks (task loss) and the extent of the reduction in average wages that the worker has experienced after the injury (wage loss). If the claimant's postinjury wages are at least 90 percent of the preinjury wages, then permanent partial general disability payments are based solely upon the worker's functional impairment percentage. If the claimant's postinjury wages are less than 90 percent of the preinjury wages, the wage loss percentage is averaged with the task loss percentage to arrive

at the percentage of permanent partial general disability, so long as that average equals or exceeds the functional impairment percentage.

As noted, McDonald's does not dispute the ALJ's finding, which was affirmed by the Board, that Fernandez suffered a 7 percent functional impairment, and it does not contest her award of workers compensation benefits on that basis. Rather, McDonald's challenges the Board's authority to average Fernandez' wage loss percentage with her task loss percentage to effect a work disability compensation award. McDonalds makes the point that, as a matter of law, Fernandez' postinjury wages must always be less than 90 percent of her preinjury wages because her immigration status precludes her from going back to work. See Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324a(a)(2) (unlawful for employer to continue to employ unauthorized alien upon learning of illegal status). Therefore, McDonald's contention essentially asks us to construe K.S.A. 44-510e(a) to add an exception to work disability that prohibits an unauthorized alien from receiving permanent partial general disability compensation in excess of the percentage of the worker's functional impairment.

McDonald's points to the ALJ's holding that paying workers compensation benefits based upon lost wages to an injured unauthorized alien who cannot legally return to work in this country would be contrary to public policy. One can imagine that debate having more than one side, *e.g.*, arguing that an employer who must bear the responsibility for maintaining a safe work environment for all employees and who should exercise some degree of vigilance to avoid creating illegal employment situations, should not reap a benefit when an illegally employed worker suffers an on-the-job injury. Nevertheless, such a public policy debate is not required where legislative intent can be gleaned directly from the Act's plain language. As we recently observed in *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 348, 277 P.3d 1062 (2012):

"We take the legislature at its word, unless there is ambiguity, because the legislature, unlike the judiciary, is one of the branches of government charged with development of public policy on behalf of the electorate and because our defer-

ence to clear statutory language leads to long-term predictability and stability in Kansas law."

Fernandez does not dispute her immigration status or the corresponding work prohibition. Instead, she urges us to simply apply K.S.A. 44-510e(a) as written because the legislature is presumed to have expressed its intent through the language of the statutory scheme, and when a statute is plain and unambiguous, the court must give effect to the legislative intention as expressed in the statutory language. See *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009).

Like the Board majority, Fernandez relies heavily on our *Bergstrom* decision. There, we construed K.S.A. 44-510e in the context of whether an injured worker had to make a good-faith effort to obtain postinjury employment in order to obtain work disability in excess of the worker's functional impairment. *Bergstrom* declined to enforce the court-made "good faith effort" doctrine because this court determined that it was improper to construe K.S.A. 44-510e in a manner that added an exception that could not be found within the plain language of the Act. Particularly germane to this appeal, we clearly stated a fundamental construction principle which bears repeating:

"When a workers compensation statute is plain and unambiguous, this court must give effect to its express language rather than determine what the law should or should not be. The court will not speculate on legislative intent and will not read the statute to add something not readily found in it." 289 Kan. at 607-08.

Fernandez' point is well taken. The plain language of K.S.A. 44-510e provides only two exceptions to basing the permanent partial general disability award in part upon the claimant's postinjury wage reduction percentage: (1) where the postinjury wage reduction is 10 percent or less, *i.e.*, the injured worker continues to earn at least 90 percent of his or her prior wage; or (2) where the functional impairment percentage is greater than the result of averaging the task loss percentage with the wage loss percentage. An additional exception based upon the claimant's immigration status cannot reasonably be gleaned from the language employed in K.S.A. 44-510e. If there is to be any statutory support for our manufacturing an

unauthorized alien exception to work disability, it must be found elsewhere. *Cf. Coma Corporation v. Kansas Dept. of Labor,* 283 Kan. 625, 630, 154 P.3d 1080 (2007) (plain language of Kansas Wage Payment Act [KWPA], K.S.A. 44-312 *et seq.* does not exclude undocumented workers from KWPA protections).

McDonald's attempts to guide us on an indirect path to find statutory support for its proposed unauthorized alien exception, starting at the point where the purpose of the Act is stated in K.S.A. 44-510g. It argues that the Board went astray by isolating the provisions of K.S.A. 44-510e, rather than considering the Act as a whole. See *Redd v. Kansas Truck Center,* 291 Kan. 176, 195, 239 P.3d 66 (2010) (when construing statutes for legislative intent, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible). While we agree with the concept of taking a global look at the entire Act, we fail to discern any disharmony created by the plain language of K.S.A. 44-510e. To the contrary, our review of the Act as a whole corroborates that K.S.A. 44-510e should be construed exactly as it reads.

We begin our review of the Act where McDonald's points us, at K.S.A. 44-510g. That particular section of the Act addresses vocational rehabilitation. It provides for the appointment of a specialist in vocational rehabilitation to be the vocational rehabilitation administrator. The stated primary purpose of the Act language in the first sentence of K.S.A. 44-510g—"to restore the injured employee to work at a comparable wage"—upon which the Board dissent and now McDonald's place so much emphasis, was proffered as the reason for establishing that vocational rehabilitation position. Elevating that first sentence of K.S.A. 44-510g to the status of being the overarching legislative purpose which should impact the interpretation of every provision of the entire Act is an example of the proscribed practice of isolating a statutory provision out of context. Moreover, the legislature described its intent in the first provision of the Act:

"It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation

act to both. The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder." K.S.A. 2007 Supp. 44-501(g).

Also, K.S.A. 2007 Supp. 44-501(a) states that

"[i]f in any employment to which the workers compensation act applies, personal injury by accident arising out of and in the course of employment is caused to an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the workers compensation act."

That legislative declaration speaks to the "employment to which the workers compensation act applies," rather than the type of compensation that may be payable. Here, McDonald's concedes that an employment relationship existed between itself and Fernandez, that she suffered personal injury by accident arising out of and in the course of her employment, and that compensation was payable to her under the Act for her functional impairment. McDonald's proposed path through the Act does not take us through any provision that says an unauthorized alien is entitled to *some*, but not *all*, compensation payable under the Act. " 'An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there.' " *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 940, 218 P.3d 400 (2009) (quoting *Steffes v. City of Lawrence*, 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 [2007]).

Next, we look at how the legislature defines "employee" under the Act. K.S.A. 2007 Supp. 44-508(b) defines the term, in part, to be *"any* person who has entered into the employment of or works under any contract of service or apprenticeship with an employer." (Emphasis added.) Pointedly, the definition of "employee" does not require that the employment, contract of service, or apprenticeship involve a legal relationship or that the persons involved possess the requisite documentation to legally work within the United States. Additionally, the provision continues by reciting a nonexclusive list of positions and persons that are deemed to be employees under the Act. Interestingly, that list includes "minors, whether such minors are legally *or illegally employed."* (Emphasis added.) K.S.A. 2007 Supp. 44-508(b). Moreover, the K.S.A. 2007

Supp. 44-508(b) list specifies when the Act's coverage is restricted for certain types of employees, such as the provision stating that "persons employed by educational, religious and charitable organizations" are within the Act's definition of "employee," "but only to the extent and during the periods that they are paid wages by such organizations." K.S.A. 2007 Supp. 44-508(b).

Thus, we can glean two points from the Act's definition of "employee." First, the legislature's description of covered minors to include those "illegally employed" negates the notion that the legislature intended to make an illegal employment relationship a per se bar to workers compensation benefits. Second, in the definition, the legislature demonstrated its ability to specifically restrict those employees it wanted to be covered by the Act, and it refrained from excluding unauthorized aliens. Courts should not engraft an exception that the legislature has not included in the statute. *Law v. Law Co. Bldg. Associates*, 295 Kan. 551, Syl. ¶ 5, 289 P.3d 1066 (2012).

Similarly, K.S.A. 44-505 and K.S.A. 44-506 enumerate specific types of employment relationships that are excluded under the Act. Conspicuously absent from those exclusionary provisions is any mention of unauthorized aliens. Again, we should take the legislature at its word.

Before concluding, we pause to acknowledge that the legislature made changes to K.S.A. 44-510e in 2011 that require a work disability claimant to prove that he or she has a postinjury wage loss by showing that the person has the legal capacity to enter into a valid employment contract. See L. 2011, ch. 55, sec. 9. But the parties have not argued how those statutory changes may have impacted this case, and we decline to do so on our own.

In short then, under the statutes in effect when the claimant was injured in this case, the provisions of K.S.A. 44-501e plainly applied to Fernandez, and her immigration status did not preclude her from receiving work disability compensation.

Affirmed.