NOT DESIGNATED FOR PUBLICATION

No. 113,911

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID ALLEN,
*Appellee*,

v.

CARMAX INC.
and
CHARTER OAK FIRE INSURANCE COMPANY,
*Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed June 10, 2016. Affirmed.

*Vincent A. Burnett* and *Dallas L. Rakestraw*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellant.

*Joseph Seiwert*, of Snider & Seiwert, L.L.C., of Wichita, for appellee.

Before GARDNER, P.J., LEBEN, J., and HEBERT, S.J.

*Per Curiam*: Carmax Inc. and its insurer Charter Oak Fire Insurance Company (collectively referred to as Carmax), appeal from a decision of the Kansas Workers Compensation Board (the Board) holding that Carmax must pay a portion of David Allen's increased rent for wheelchair accessible housing or find other approved accessible housing for Allen.

Based on the particular facts of this case and the option accorded by the Board to Carmax, we affirm the majority decision.

1

*Factual and Procedural Background*

In 2007, Allen suffered a back injury when a chair rolled out from under him while he was working at a Carmax dealership in Wichita. In 2009, he received an award under the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.* (the Act), for permanent partial disability. The award included future medical treatment.

Allen moved back to his home state of Georgia, where he continued to receive pain management therapy due to his injury. Some 5 years later, Allen underwent a medical procedure intended to alleviate his ongoing back pain. The procedure was not successful and resulting complications rendered Allen a partial paraplegic. Although after extensive rehabilitation Allen regained limited ability to walk short distances with assistance, he cannot feel anything below his waist, lacks bladder control, and must use a wheelchair to get around. Allen sought additional compensation under the Act and Carmax settled that claim on the basis of permanent total disability. Again, the award included future medical treatment.

At the time of the unsuccessful procedure, Allen was living with his adult son in a rented 100-year-old farmhouse which required modifications to make it wheelchair accessible. Carmax acknowledged its obligation to provide such modifications and attempted to make such arrangements before Allen's release from the rehabilitation facility. However, Allen's landlord would not allow modifications to her house and advised that she had already planned to not renew Allen's 1-year lease due to concerns regarding poor maintenance of the property.

Before his farmhouse lease expired, Allen looked for appropriate housing in a five county area around his current residence in Georgia and even looked around Louisville, Kentucky, in order to be near one of his sons, whose assistance he required. He found only one suitable wheelchair accessible apartment, which was half the size of the

2

farmhouse. The apartment is located in a gated community zoned primarily for residents over the age of 55, and the complex provides several communal amenities. Carmax did not assist Allen in locating the apartment nor did it offer any alternative.

Allen's rent for the farmhouse had been $625 per month; the rent for the apartment is $1265 per month. Allen applied under the Act to have Carmax pay for, among other things, the $640 monthly rent increase.

An Administrative Law Judge (ALJ) found that Allen failed to sustain his burden of proving his rent increase constituted compensable medical treatment. Allen timely sought review of that decision by the Board.

A three-member majority of the Board disagreed with the ALJ and found that Allen's request for rent was compensable under the Act. The Board majority did not, however, grant Allen's request in full but allowed only a $475 increase based on the rent for a one-bedroom apartment. The Board also offered Carmax an "option, subject to the judge's approval" to "place [Allen] in housing comparable to the farmhouse, assuming such housing is wheelchair accessible or modified to fit [Allen's] medical needs." (There is no indication in the record that Carmax has sought to exercise that option.)

A two-member Board minority dissented and would have found that Allen's rent increase "is simply not medical treatment, let alone medical treatment that is reasonable or necessary to cure or relieve the effects of [Allen's] accidental injury."

Carmax timely petitioned this court to review the Board's decision.

*The Board Did Not Err by Granting Allen a Portion of His Rent Increase*

Carmax contends the Board majority misinterpreted and misapplied the Act in holding Allen's rent increase is medical treatment necessary to cure or relieve the effects of Allen's injury. Allen disagrees and urges this court to affirm the majority's decision.

This court's review is governed by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*. K.S.A. 2015 Supp. 44-556(a). Carmax bears the burden of proving the invalidity of the Board majority's decision. K.S.A. 2015 Supp. 77-621(a)(1).

Though Carmax frames its issue as a legal challenge to the Board majority's interpretation and application of the Act, its arguments also challenge the majority's factual findings that Allen's rent increase was necessary to cure or relieve the effects of his injury. These arguments invoke diverse standards of review.

This court has unlimited review of the Board's interpretation and application of the law under K.S.A. 2015 Supp. 77-621(c)(4), owing no deference to the Board's interpretation. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013). In that regard, our legislature explicitly tells us that its intent is "that the workers compensation act shall be liberally construed only for the purpose of bringing employers and employees within the provisions of the act. The provisions of the . . . act shall be applied impartially to both employers and employees in cases arising thereunder." K.S.A. 2015 Supp. 44-501b(a). Moreover, "the legislature is presumed to have expressed its intent through the language of the statutory scheme, and when a statute is plain and unambiguous, the court must give effect to the legislative intention as expressed in the statutory language." *Fernandez v. McDonald's*, 296 Kan. 472, 478, 292 P.3d 311 (2013). However, where the plain statutory language does not reveal an answer or reveals an ambiguity, this court can apply canons of statutory construction. One such

4

canon calls for construing various provisions of the Act in pari materia to reconcile and bring the provisions into a workable harmony where possible. 296 Kan. at 479.

This court's review of the Board's challenged factual findings is limited to examining the record as a whole to determine whether the findings are supported by substantial evidence. K.S.A. 2015 Supp. 77-621(c)(7). This determination requires this court to: (1) review evidence both supporting and contradicting the Board majority's findings; (2) examine the majority's credibility determination, if any; and (3) review the majority's explanation as to why the evidence supports its findings. See *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). Notably, the Board could not "disregard undisputed evidence that is not improbable, unreasonable, or untrustworthy," which "must be regarded as conclusive." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 515, 154 P.3d 494 (2007). This court, however, cannot reweigh the evidence or engage in de novo review of the Board's factual findings. K.S.A 2015 Supp. 77-621(d).

*Governing Law*

In considering Allen's request for postaward medical care in the form of his increased rent, both Carmax and Allen cite K.S.A. 2006 Supp. 44-510k, which was the statute in effect at the time of Allen's original injury and award. Likewise, the Board majority and minority cited and applied that law. We accept this agreement as to controlling law and will apply K.S.A. 2006 Supp. 44-510k to our analysis. This statute provides that an award for future medical care can be made upon a finding "that the care is necessary to cure or relieve the effects of the accidental injury which was the subject of the underlying award."

The statutes do not define with any great specificity or precision exactly what constitutes "treatment" or "care." Both Carmax and the dissenting minority of the Board

5

would seem to suggest that increased rent is simply not compensable medical treatment as a matter of law. But the Board and this court have generally determined what constitutes compensable medical treatment or care on a case-by-case, fact-driven basis. Indeed, here, Carmax primarily raises factual and evidentiary issues in contending that the Board majority erred in determining Allen's rent increase to be compensable medical treatment or care.

We note first that Carmax has never disputed its duty to provide Allen with medically necessary wheelchair accessible living accommodations. It is undisputed that Allen lost his mobility as a result of complications arising out of treatment for his work injury. It is undisputed that his wheelchair constitutes an apparatus that is necessary to cure and/or relieve him from the effects of his aggravated injury. Thus, if the wheelchair is necessary, it logically follows that accommodation in his housing is required to facilitate use of the wheelchair. The Board majority reasoned that Carmax's duty "did not dissipate" simply because Allen lost his farmhouse lease, noting that at least in part Allen had to leave the rented farmhouse because the landlord was not agreeable to permanent wheelchair changes being made to her property.

In order to accommodate Allen's needs, Carmax had two basic options: to modify his then current residence or to assist him in securing a living situation amenable to accessibility accommodations. The first option proved to be unviable, and Carmax failed to exercise the second option, leaving Allen to fend for himself. Carmax would excuse this lapse by suggesting that the record lacks any evidence that Allen ever asked Carmax to find him a wheelchair accessible residence or to provide him with some type of assisted living after he lost his lease. The record is equally clear, however, that Carmax never offered any viable method of fulfilling its duty to Allen, despite its actual knowledge that the farmhouse could not be accommodated to his needs.

6

The uncontroverted evidence establishes that Allen searched far and wide for an accessible residence and that his present apartment was the only alternative available to him which met his needs under the circumstances. Carmax offered no evidence that any other or less expensive option was available. Carmax has not argued that it should pay only that portion of the rent directly attributable to the wheelchair-accessible features of the apartment—accommodations that are medically necessary to cure or relieve the effects of Allen's injury.

Carmax would suggest that Allen chose the apartment in order to live in a nicer, newer residence with more amenities, and that this, rather than his use of the wheelchair, was the driving force behind his rent increase. This flies in the face of Allen's unrefuted testimony that he is basically unable to avail himself of the communal amenities and that the apartment was the only one which met his requirements and needs for interior wheelchair mobility. This supports the Board's majority finding that Allen's rent increase was not occasioned simply by a lifestyle choice.

That the Board clearly based its decision on Allen's particular circumstances is reflected in its limitation of the compensable rent increase to the amount attributable to a one-bedroom apartment in the same complex. Allen had not established a medical reason for the second bedroom occupied by his son, although the son did provide substantial assistance for him.

In accordance with our standards of review and based on the narrow circumstances recited in the Board majority opinion, we find that substantial competent evidence in the record as a whole supports the finding that Allen's residence in his current apartment is a direct result of his aggravation injury and constitutes medical treatment or care necessary to cure or relieve him from the effects of that injury. The resulting difference in rent from his prior inaccessible residence is an amount compensable under the Act.

7

As provided by the Board's order, Carmax is not without remedy if it can provide, with judicial approval, some other, presumably less expensive, wheelchair accessible housing comparable to Allen's prior residence.

Affirmed.