NOT DESIGNATED FOR PUBLICATION

No. 126,532

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMIE R. BROWN,
*Appellant*,

v.

PAYNE & JONES, CHTD., and OWNERS INSURANCE COMPANY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Oral argument held October 16, 2024. Opinion filed January 3, 2025. Reversed and remanded with directions.

*Zachary A. Kolich*, of Merriam, for appellant.

*Kevin M. Johnson*, of Wallace Saunders, Chartered, of Overland Park, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.

PER CURIAM: Jamie R. Brown appeals from her workers compensation award. The Workers Compensation Appeals Board (the Board) interpreted K.S.A. 44-510d(b)(23) of the Workers Compensation Act, K.S.A. 44-501 et seq. (the Act), to exclude the use of competent medical evidence when assessing an impairment rating for scheduled injuries. The Board held that the relevant statute requires use of the American Medical Association Guides to the Evaluation of Permanent Impairment (6th ed. 2008) alone. Brown argues that the Sixth Edition of the Guides is merely a starting point, and competent medical evidence may be considered in calculating an impairment rating of a scheduled injury. Alternatively, Brown argues that if K.S.A. 44-510d(b)(23) does not

1

allow the use of competent medical evidence, then the statute is unconstitutional for failing to provide injured workers an adequate remedy at law. Payne & Jones, Chartered argues that K.S.A. 44-510d(b)(23) requires functional impairment of a scheduled injury be limited to criteria from the Sixth Edition without consideration of additional competent medical evidence. Payne & Jones also argues that the statute is constitutional. Because the Board erred by not considering competent medical evidence, we reverse and remand with directions.

FACTS

In June 2021, Brown was employed by the law firm Payne & Jones when she fell off a ladder onto a concrete patio, fracturing her right wrist. The parties stipulated that the claim was compensable by confirming that Brown provided timely notice of her accident, that Brown and Payne & Jones were in an employment relationship when the accident occurred, and that coverage under the Act was appropriate. The parties also stipulated that Brown was entitled to an award of future medical treatment.

The issue to be determined at the evidentiary hearing was the nature and extent of Brown's permanent partial impairment. To preserve the issue for appeal, Brown raised a constitutional challenge to the mandatory use of the Sixth Edition as the sole basis for determining the nature and extent of her permanent impairment from a scheduled injury under K.S.A. 44-510d(b)(23).

Brown testified that after her fall fractured her right wrist, her employer took her to the Overland Park Regional Medical Center emergency room. Her authorized medical care was ultimately transferred to Dr. Kenneth Unruh. Dr. Unruh performed surgery on Brown's right wrist, installing medical hardware which has not been removed. Dr. Unruh provided follow-up care in October 2021. He released Brown without permanent physical restrictions. Brown continued to work for Payne & Jones, performing her regular duties.

2

Brown continued to experience pain and numbness in the palm of her right hand and pain at the surgical incision site, adding that the weather affects how her upper extremity feels. Due to her injuries, Brown sustained decreased range of motion and grip strength in her right hand, forearm, and wrist. She also had a bump on the top of her right wrist.

Dr. Unruh testified that, in his opinion, Brown sustained a 3% impairment of her upper right extremity from a right distal radius fracture, which required open reduction internal fixation. Dr. Unruh also performed a carpal tunnel release to reduce the possibility that Brown would suffer carpal tunnel syndrome from her injury. Although Dr. Unruh diagnosed a "pending possible carpal tunnel syndrome," he did not consider the condition in arriving at his final impairment opinion.

Dr. Unruh last evaluated Brown in October 2021. During that visit, Brown complained of tingling and sharp pain shooting into her right hand, as well as weakened grip strength. Dr. Unruh confirmed that he issued an impairment rating under the assumption that the discomfort would last six months and then ultimately resolve. Dr. Unruh testified that his 3% rating of permanent partial impairment was based solely and exclusively on the Sixth Edition. He did not take any other competent medical evidence into consideration.

Dr. Daniel Zimmerman evaluated Brown in August 2022. Dr. Zimmerman diagnosed a right wrist fracture, rating permanent impairment at 5% of the right forearm based solely upon the Sixth Edition. But Dr. Zimmerman also provided a second opinion that Brown sustained 32% impairment of the right upper extremity when he first considered the Sixth Edition's rating and then reviewed competent medical evidence. Specifically, Dr. Zimmerman considered his physical examination findings, Brown's medical history, his own review of the relevant medical records, and reasonable medical judgment based on years of performing rating assessments. Dr. Zimmerman stated that

strict adherence to the Sixth Edition neither appropriately nor adequately considers the totality of Brown's impairment. Dr. Zimmerman testified that the 32% impairment more accurately reflected the true level of impairment Brown sustained from her work-related accident.

The administrative law judge awarded Brown compensation for 4% permanent impairment to the right wrist based on the Sixth Edition. After an appeal to the Board, a majority of the Board affirmed Brown's award of 4%. Board member John F. Carpinelli dissented, citing the reasoning he put forth in an earlier dissent in *Weaver v. Unified Government of Wyandotte Co.*, No. AP-00-0464-459, 2022 WL 4086270, at *8 (Kan. Work. Comp. App. Bd. August 31, 2022).

Brown timely appeals.

ANALYSIS

*Did the Board err in determining Brown's impairment?*

Brown argues that the Board's award of 4% permanent impairment was too low because it did not account for competent medical evidence after review of the Sixth Edition. Payne & Jones argues that competent medical evidence is not part of the process, and the impairment determination must come exclusively from the Sixth Edition.

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs this court's review of cases arising under the Act, K.S.A. 44-501 et seq. K.S.A. 44-556(a). The standard of review varies depending upon the issue raised. See K.S.A. 77-621 (defining and limiting scope of review of administrative decisions under KJRA).

On appeal, the burden of proving the invalidity of the agency action rests on the party asserting the invalidity. K.S.A. 77-621(a)(1); *EagleMed v. Travelers Insurance*, 315 Kan. 411, 419, 509 P.3d 471 (2022).

When the appellant argues that the Board erroneously applied the law to undisputed facts, appellate courts exercise de novo review. *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017).

"[I]nterpretation of the Workers Compensation Act and the administrative regulations promulgated to implement the Act's provisions are questions of law subject to de novo review." *EagleMed*, 315 Kan. at 420.

"The interpretation or construction of the Workers Compensation Act is a question of law. But once that interpretation or construction occurs, the ultimate question of whether an accident arises out of and in the course of employment is a question of fact. [Citation omitted.]" *Estate of Graber v. Dillon Companies*, 309 Kan. 509, 513, 439 P.3d 291 (2019). "When exercising unlimited review on questions of statutory interpretation, an appellate court owes no deference to interpretations given to the Act by the [Board]." *Estate of Graber*, 309 Kan. 509, Syl. ¶ 2.

The Act is to be liberally construed to bring employers and employees within the provisions of the Act, and the Act's provisions should be applied impartially to both employers and employees in cases arising under it. K.S.A. 44-501b(a); see *Fernandez v. McDonald's*, 296 Kan. 472, 479-80, 292 P.3d 311 (2013); see also *Mera-Hernandez*, 305 Kan. at 1187 (citing liberal interpretation provision of K.S.A. 44-501b[a] to find that employee injured at work was entitled to benefits even when it was later determined the employee was an illegal alien working under a false name).

Brown argues that this court must reverse and remand because the Board's application of K.S.A. 44-510d(b)(23) is at odds with this court's opinion in *Weaver v. Unified Government of Wyandotte County*, 63 Kan. App. 2d 773, 539 P.3d 617 (2023). Brown is correct.

The facts in *Weaver* involved William Weaver, who accidentally injured his right hand and wrist. The Board awarded him compensation based solely on reference to the Sixth Edition, without considering competent medical evidence. This court reversed and remanded, instructing the Board to consider competent medical evidence. 63 Kan. App. 2d at 790.

Similarly, the Board held that Brown sustained a 4% permanent partial impairment to her right upper extremity from her June 2021 work-related accident. The administrative law judge, and later the Board, arrived at this award by averaging the 3% rating opinion from Dr. Unruh and 5% rating from Dr. Zimmerman. These percentages were determined solely by reference to the Sixth Edition and the Board did not consider competent medical evidence in determining its 4% permanent partial impairment.

The Board read K.S.A. 44-510d(b)(23) (the statute used to determine Brown's impairment rating for a scheduled injury) as requiring it to base impairment ratings solely on the Sixth Edition, to the exclusion of "competent medical evidence." The Board relied on its decision in *Butler v. The Goodyear Tire and Rubber Co.*, No. AP-00-0456-096, 2021 WL 2287732, at *4-5 (Kan. Work. Comp. App. Bd. May 27, 2021), which pointed out the differences in the plain language between the scheduled injury statute applicable here (K.S.A. 44-510d[b][23]), which does not reference "competent medical evidence," and the nonscheduled injury statute (K.S.A. 44-510e[a][2][B]), which requires use of "competent medical evidence." In *Butler*, the Board held that the plain language of K.S.A. 44-510d(b)(23) allows it to use only the Sixth Edition to rate scheduled injuries. 2021 WL 2287732, at *5. Under that rationale, an impairment rating for a nonscheduled

injury under K.S.A. 44-510e(a)(2)(B) could be based on both the Sixth Edition and competent medical evidence, see *Johnson v. U.S. Food Service*, 312 Kan. 597, 603, 478 P.3d 776 (2021), but an impairment rating for a scheduled injury under K.S.A. 44-510d(b)(23) must be based solely on the Sixth Edition.

Carpinelli, a board member in *Weaver*, dissented again in this case and disagreed with the Board majority's interpretation of K.S.A. 44-510d(b)(23). He argued that there was no relevant difference between functional impairment from a scheduled injury under K.S.A. 44-510d(b)(23) versus functional impairment from a nonscheduled injury under K.S.A. 44-510e(a)(2)(B). They both would require competent medical evidence to supplement the Sixth Edition to determine functional impairment because K.S.A. 44-508(u) provides the following definition:

> "'Functional impairment' means the extent, expressed as a percentage, of the loss of a portion of the total physiological capabilities of the human body as established by *competent medical evidence* and based on the fourth edition of the American medical association guides to the evaluation of impairment, if the impairment is contained therein." (Emphasis added.)

Carpinelli's dissent focused on the similarities of the two types of injuries—they both resulted in functional impairment:

> "Based on the definition of functional impairment in K.S.A. 44-508(u), competent medical evidence is a 'baked-in' requirement for any impairment determination. If K.S.A. 44-510d is read as excluding 'competent medical evidence,' we are ignoring the very definition of K.S.A. 44-508(u), which is incorporated into K.S.A. 44-510d when the latter statute refers to the term defined in the former statute. In essence, K.S.A. 44-510e, in mentioning 'competent medical evidence,' is superfluous, because the requirement of providing a functional impairment rating necessarily requires competent medical evidence by definition."

K.S.A. 44-510e(a)(2)(B), which governs whole body/nonscheduled injuries, states:

"The extent of permanent partial general disability shall be the percentage of functional impairment the employee sustained on account of the injury as established by competent medical evidence and based on the fourth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein, until January 1, 2015, but for injuries occurring on and after January 1, 2015, based on the sixth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein."

Thus, for nonscheduled injuries, the statute instructs the Board to consider competent medical evidence. But the statute for scheduled injuries, K.S.A. 44-510d(b)(23), does not refer to competent medical evidence. The Board majority found that the plain language of K.S.A. 44-510d(b)(23) requires it to determine the functional impairment caused by a scheduled injury solely by using the Sixth Edition. K.S.A. 44-510d(b)(23) states:

"Loss of or loss of use of a scheduled member shall be based upon permanent impairment of function to the scheduled member as determined using the fourth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein, until January 1, 2015, but for injuries occurring on and after January 1, 2015, shall be determined by using the sixth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein."

Brown contends that the Board's interpretation of K.S.A. 44-510d(b)(23) is erroneous because it excludes competent medical evidence. Payne & Jones argues that the Board's interpretation is correct because the plain language of K.S.A. 44-510d(b)(23) excludes competent medical evidence, mandating the use of the Sixth Edition as the sole determiner of functional impairment. Because this issue presents a question of statutory interpretation, we review it de novo. See *Johnson*, 312 Kan. at 600.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be determined. An appellate court first tries to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language. *Montgomery v. Saleh*, 311 Kan. 649, 654-55, 466 P.3d 902 (2020). Where there is no ambiguity, appellate courts need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021).

The Board correctly determined that the two statutes use different language but overstated the significance of this difference. This court in *Weaver* conceded that the language differs between scheduled and nonscheduled injuries. 63 Kan. App. 2d at 782. K.S.A. 44-510e(a)(2)(B) requires functional impairment from nonscheduled injuries to be "established by competent medical evidence" and "based on the sixth edition." But K.S.A. 44-510d(b)(23) requires that functional impairment "shall be determined by using the sixth edition" and does not refer to competent medical evidence. Thus, nonscheduled injuries are "based on" the Sixth Edition while scheduled injuries "shall be determined" by the Sixth Edition. K.S.A. 44-510e(a)(2)(B); K.S.A. 44-510d(b)(23). As the *Weaver* court noted, the language is distinctively different. 63 Kan. App. 2d at 782. But the *Weaver* court read the Act *in pari materia* and concluded that reconciling and bringing its provisions into workable harmony required reference to the definition of functional impairment at K.S.A. 44-508(u). 63 Kan. App. 2d at 782-84.

"'Functional impairment,' as defined in K.S.A. 44-508(u) is the logical equivalent of 'impairment of function,' as used in K.S.A. 44-510d(b)(23). Using K.S.A. 44-508(u)'s definition, our evaluation of functional impairment must be established by competent

9

medical evidence and be based on the relevant edition of the Guides. That definition applies regardless of whether a worker has suffered a scheduled or non-scheduled injury.

. . . .

"The plain language of K.S.A. 44-510d(b)(23), read in context, thus counsels that ratings for scheduled injuries may consider competent medical evidence and need not be based solely on the relevant edition of the Guides. The Guides serve as a starting point, yet not necessarily an ending point." 63 Kan. App. 2d at 783-84.

In short, the published opinion from this court—*Weaver*—has adopted the same rationale as Carpinelli's dissent in this case. Payne & Jones fails to mention *Weaver* in its brief, either to distinguish it from this case or to argue why we should not find *Weaver* persuasive. One Kansas Court of Appeals panel has the right to disagree with a previous panel of the same court. *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018). But *Weaver* is incisive, well-reasoned, and directly on point. We further conclude that the reasoning of the *Weaver* court is persuasive based on this record and remand this matter for reevaluation consistent with the *Weaver* decision. Thus, on remand the Board is directed to determine Brown's functional impairment rating for her scheduled injuries as follows: The fact-finder should begin with the Sixth Edition as a starting point and consider competent medical evidence to modify or confirm that rating. See *Weaver*, 63 Kan. App. 2d at 790. Thus, we reverse and remand with directions.

Reversed and remanded with directions.