(224 P.3d 1197)

No. 102,236

JONATHAN Z. TYLER, *Appellant*, v. GOODYEAR TIRE & RUBBER COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, *Appellees*.

Opinion filed February 26, 2010.

George H. Pearson III, of Topeka, for appellant.

*John A. Bausch* and *Patrick M. Salsbury*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for appellees.

Before RULON, C.J., ELLIOTT and HILL, JJ.

RULON, C.J.: Claimant, Jonathan Z. Tyler, appeals the Kansas Division of Workers Compensation Board's (Board) decision limiting his compensation to functional impairment and denying Claimant work disability compensation. Claimant contends the Board erred in denying compensation based on the finding there was no nexus between his injury and subsequent wage loss. According to Claimant, no such nexus is required under the rules of statutory construction applied by our Supreme Court in *Casco v. Armour-Swift Eckrich*, 283 Kan. 508, 154 P.3d 494 (2007), and its progeny.

We reverse and remand with directions.

The facts of this case are not in dispute. Tyler is employed at the Goodyear tire plant in Topeka. On January 29, 2007, Claimant was preparing to hoist a tire mold out of the curing vessel when a chain hoist fell from above striking him in the head. The falling hoist knocked Claimant to the ground and he was taken to the hospital. Claimant had a cut on the top of his head and suffered neck pain as a result of the accident.

Claimant was treated and returned to work the following day. Claimant continued to see a physician at Goodyear until he was

referred to another physician, Dr. Michael Smith, because of continued pain and discomfort. Dr. Smith ordered an MRI, which indicated Claimant had bulging disks in his neck. On September 25, 2007, Dr. Smith released Claimant at maximum medical improvement.

Claimant maintained his position at Goodyear while undergoing treatment for his injury after his physician's release. He was under no direct work restrictions. Although his neck pain did cause some difficulty, Claimant performed his normal job duties.

Claimant's pay remained the same until July 2008 when, as the result of a new union contract, Goodyear restructured its production week to increase production. This contract was nationally negotiated and affected all union Goodyear employees. As a result of this restructuring, Goodyear added an additional shift and changed the way workers were offered overtime work. After this restructuring, Claimant's workweek was reduced from 7 to 5 days, and his average weekly pay fell from $1,654 to $940.57. Claimant stated much of his wage loss was due to reduced overtime, even though he did not always accept overtime when such work was available.

Claimant filed an application for workers compensation on January 10, 2008. Independent medical examiner, Dr. Joseph Huston, rated Claimant's impairment at 6%, with 4% preexisting, and found Claimant required no work restrictions. Claimant's medical examiner, Dr. Daniel Zimmerman, found Claimant had range of motion limitations in his neck and determined Claimant had an 11% permanent partial impairment as a result of the accident. Zimmerman noted Claimant reported a 40% task loss based upon his recommendation that Claimant lift 50 pounds occasionally and only 25 pounds frequently. A medical evaluator hired by Goodyear found Claimant had no permanent impairment.

Subsequently the administrative law judge (ALJ) first found Claimant's functional impairment to be 6.5%. The ALJ further found Claimant's wages dropped dramatically as a result of Goodyear's addition of a new shift and redistribution of overtime, and Claimant's injury bore no direct relationship to that wage decline. However, the ALJ found "the right to work disability is not necessarily triggered by a causative link between the injury and the

loss of wages." The ALJ found Kansas statutory law did not require a causal connection between the injury and wage loss and, because Claimant had suffered a wage loss greater than 10% Claimant was eligible to receive work disability compensation. Furthermore, the ALJ found Claimant's permanent partial disability to be 41.5% and awarded Claimant work disability compensation at the rate of $483 per week for 172.23 weeks for a total award of $83,187.09.

Goodyear filed an application for review by the Board and argued the ALJ erred in granting Claimant work disability because his wage loss was caused by Goodyear's union contract, not his injury. Citing *Hernandez v. Monfort, Inc.*, 30 Kan. App. 2d 309, 41 P.3d 886, *rev. denied* 274 Kan. 1112 (2002), Goodyear argued there must be a causal nexus between an injury and a loss in pay for that injury to be compensable.

The Board agreed with Goodyear and found Claimant was not eligible for work disability. The Board noted K.S.A. 44-510e does not require a direct causal connection between injury and wage loss; however, the nexus requirement expressed in *Hernandez* had not been expressly overruled. Noting the purpose of the Workers Compensation Act is to compensate workers for their injuries, not for any wage loss, the Board reversed the award of work disability and granted Claimant 26.98 weeks of permanent partial disability compensation at $483 per week for a total award of $13,031.34 for a 6.5% functional disability.

Claimant filed a timely petition for judicial review with this court.

Claimant argues on appeal the plain and unambiguous language of K.S.A. 44-510e does not require a causal relationship between an injury and wage loss and *Casco* effectively overruled *Hernandez's* nexus requirement. Goodyear maintains the Board properly applied *Hernandez* and an award of work disability would run counter to the intent of the Workers Compensation Act in this case.

When the facts in a workers compensation case are not disputed, the question is whether the Board correctly applied those facts to the law, which the appellate court reviews de novo. *Martinez v. Excel Corp.*, 32 Kan. App. 2d 139, 142, 79 P.3d 230 (2003). Furthermore, the sole issue in this case involves the interpretation of

the language of K.S.A. 44-510e, which is a question of law. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009).

Under the doctrine of operative construction, the Board's interpretation of the law is entitled to judicial deference. If there is a rational basis for the Board's interpretation, the Board should be affirmed upon judicial review. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on the court. *Casco*, 283 Kan. at 521; see also *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007) (relying on doctrine of operative construction in context of question of law on undisputed facts). The party challenging the Board's interpretation bears the burden of proving its invalidity. *Foos v. Terminix*, 277 Kan. 687, 693, 89 P.3d 546 (2004).

The calculation of compensation for permanent partial disabilities under the Workers Compensation Act is governed by K.S.A. 44-510e. In relevant part, K.S.A. 44-510e(a) states:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury. In any event, the extent of permanent partial general disability shall not be less than the percentage of functional impairment. . . . An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

Claimant contends the rules of statutory construction announced by our Supreme Court in *Casco* and *Graham* should be applied here. According to Claimant because there is no language requiring a relationship between an injury and wage loss in the above statute, no such requirement should be read into the statute. Analysis of this argument must therefore begin with an overview of the rules expressed in *Casco*, *Graham*, and their progeny.

In *Casco,* our Supreme Court overturned the long-standing parallel injury rule in workers compensation cases that was established in *Honn v. Elliott,* 132 Kan. 454, 295 Pac. 719 (1931). *Casco,* 283 Kan. at 527. The court found the *Honn* court considered statutory language which was specifically applicable to permanent total disability and erroneously applied such interpretation to permanent partial disability. 283 Kan. at 525. Applying the canon of statutory construction "courts cannot add something to a statute that is not readily found in the statute," the *Casco* court overturned *Honn.* 283 Kan. at 525, 527.

Our Supreme Court applied a similar canon of construction in the analogous circumstance presented by *Graham.* The *Graham* court reversed this court's holding that a physician's testimony was required to support a finding of wage loss for purposes of calculating wage loss under K.S.A. 44-510e(a). According to *Graham,* while a physician's testimony was required under plain statutory language to prove task loss, the statute plainly established wage loss was calculated simply by comparing a Claimant's pre and postinjury wages. The Graham court concluded under the plain language of the statute there was no requirement wage loss be supported by a physician's testimony. 284 Kan. at 554-57.

Recently our Supreme Court has continued the course set in *Casco* and *Graham* in *Bergstrom v. Spears Manufacturing Co.,* 289 Kan. 605, 214 P.3d 676 (2009). The *Bergstrom* court overturned the requirement, first expressed in *Foulk v. Colonial Terrace,* 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), that a workers compensation Claimant must make a good-faith effort to find alternate employment after an injury. *Bergstrom,* 289 Kan. at 610. In *Foulk* the court concluded an implied good-faith requirement was necessary to preserve the legislature's presumed intent that able workers should work and not be compensated for sitting idle. *Foulk,* 20 Kan. App. 2d at 284. The *Bergstrom* court concluded there was no such good-faith requirement in the plain language of K.S.A. 44-510e(a). *Bergstrom,* 289 Kan. at 609. Applying *Graham,* the *Bergstrom* court held *Foulk* and its progeny suffered from the same defect in statutory interpretation by failing to "give effect only to express statutory language, rather than spec-

ulating on what the law should or should not be, and [adding] something to a statute not readily found in it." 289 Kan. at 610.

Here, while the Board's reasoning is arguably sound regarding the purpose of the Workers Compensation Act, the Board's decision nonetheless is foreclosed by our Supreme Court's rulings in *Casco, Graham,* and *Bergstrom.* These cases make a number of points clear:

- K.S.A. 44-510e(a) is a simple mathematical calculation;
- Judicial notions regarding the legislature's intent in the enactment of K.S.A. 44-510e(a) are not favored; and
- Judicial blacksmithing will be rejected even if such judicial interpretations have been judicially implied to further the perceived legislative intent.

Our reading of *Casco, Graham,* and *Bergstrom* suggests this court's decision in *Hernandez* is no longer good law. Our Supreme Court's direction in *Bergstrom* could not be clearer. Absent a specific statutory provision requiring a nexus between the wage loss and the injury, this court is not to read into the statute such a requirement. This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing, from its previous position. *Buchanan v. Overley,* 39 Kan. App. 2d 171, 175-76, 178 P.3d 53, *rev. denied* 286 Kan. 1176 (2008).

Reversed and remanded to the Workers Compensation Board with directions to reinstate the ALJ's award of work disability.