NOT DESIGNATED FOR PUBLICATION

No. 125,102

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRENDA WILLMING,
*Appellee*,

v.

ATCHISON HOSPITAL
and
KHA WORKERS COMPENSATION FUND, INC.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed February 10, 2023. Affirmed.

*Dallas L. Rakestraw* and *Brock J. Baxter*, of McDonald Tinker PA, of Wichita, for appellants.

*Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, for appellee.

Before ATCHESON, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Brenda Willming suffered carpal tunnel syndrome in both hands and other medical symptoms as an employee of the Atchison Hospital. The Kansas Workers Compensation Appeals Board (the Board) awarded work disability and other benefits to Willming for injuries sustained in the course of her employment. Atchison Hospital and its worker compensation insurer, KHA Workers Compensation Fund, Inc. (collectively, the Hospital), argue on appeal: (1) The Board's determination of Willming's wage loss is not properly supported by the record and (2) the Board failed to

1

properly offset Willming's federal pension benefits against her award. Finding no error by the Board, we affirm.

In October 2015, Willming went to work for the housekeeping department at Atchison Hospital after a prior career in housekeeping working for the Veterans Administration (VA) in Leavenworth. During her employment with Atchison Hospital, Willming developed carpal tunnel syndrome in both wrists and complex regional pain syndrome in her left arm.

Willming had carpal tunnel surgery on her left wrist in November 2017. She returned to work in the housekeeping department four weeks later but continued to have pain and numbness in both hands. Further testing showed Willming still had carpal tunnel syndrome in her left wrist. She underwent a second surgery, which did not resolve the issue. Based on the poor results on her left wrist, Willming's physician, Dr. Paul Nassab, did not recommend surgery on her right wrist.

In August 2018, Dr. Nassab released Willming from his care, provided an impairment rating, and suggested permanent restrictions of no repetitive gripping, pushing, or pulling; no lifting more than 5 to 10 pounds; and no mopping. Based on these restrictions, the Hospital transferred Willming to the dietary department. There, her job duties included washing dishes and delivering food trays to patients. Willming asked to be reassigned to a different position based on the repetitive use of her hands and arms. The Hospital attempted accommodations, which proved unsuccessful. Willming's pain continued in her hands to the point she could not close her left hand. Fearing the loss of more function in both hands by continuing to work, she submitted her resignation letter on May 17, 2019, stating, in pertinent part:

"I have been trying to work to the best of my ability with my restrictions of limited lifting and doing nothing repetitive with both hands. As a dietary employee I use my hands constantly [causing] me a lot of pain. I have become increasingly concerned . . . over more damage to both my hands."

In June 2019, Willming filed a claim against the Hospital under the Kansas Workers Compensation Act, K.S.A. 44-501 et seq. A court-appointed physician, Dr. Jarron Tilghman, examined Willming and concluded she sustained 9% permanent impairment to the body as a whole. Dr. Tilghman reviewed task lists prepared by the parties' vocational experts, Steven Benjamin and Karen Terrill. Based on Benjamin's task list, Dr. Tilghman concluded Willming sustained 37.5% task loss. Based on Terrill's task list, Dr. Tilghman concluded Willming sustained 58% task loss.

Benjamin and Terrill were asked to consider Willming's earning capacity. Based on Dr. Tilghman's restrictions, Benjamin believed Willming's wage loss was 32.5% because she could still earn $366 per week as a casino cage cashier. In contrast, Terrill believed Willming was permanently and totally disabled; therefore, her wage loss was 100%.

In November 2019, Willming began receiving $173.70 per month in Social Security retirement benefits, which increased to $175.90 per month in December 2020. She also received $2,908.89 per month in retirement benefits from her federal pension based on her previous employment at the VA. In his deposition, Benjamin testified certain federal employees receive less in Social Security because money that otherwise would have been payable under Social Security is instead paid through one of the federal retirement systems, which he referred to as "the Federal Employees Retirement System" or "FERS." Benjamin concluded two-thirds of the money Willming received under her federal pension should be characterized as Social Security retirement benefits. However, no documents were admitted into evidence by the administrative law judge (ALJ) or the

Board showing how Social Security retirement benefits, if any, are paid to federal employees upon retirement. And the Board later denied Willming's request to add the Social Security-related records attached to her brief before the Board because they had not been submitted to the ALJ.

The matter proceeded to a hearing before the ALJ. The ALJ found Willming sustained 9% body as a whole functional impairment, was not permanently and totally disabled, but was entitled to future medical benefits. The ALJ concluded Willming sustained 32.5% wage loss based on Benjamin's report and 37.5% task loss based on Dr. Tilghman's opinion relying on Benjamin's task list. Based on Benjamin's testimony, the ALJ further found $2,115.25 per month should be offset as Social Security retirement benefits as provided under K.S.A. 44-501(f). Because this offset exceeded Willming's permanent partial disability benefits of $361.46 per week, the ALJ found she was not entitled to further temporary total disability compensation.

Willming sought review by the Board. The Board affirmed in part and reversed in part. It found Willming sustained 9% permanent functional impairment of the body as a whole, was not permanently and totally disabled, and was entitled to future medical benefits. The Board further found Willming's task loss was 47.75% based on the average of Dr. Tilghman's calculations using both Benjamin's and Terrill's task lists. Additionally, the Board concluded Willming sustained 66.25% wage loss based on the average of Benjamin's and Terrill's opinions, which the Board found equally credible. The Board then determined Willming was entitled to permanent partial disability compensation based on 57% work disability.

Contrary to the ALJ's decision, the Board found any money Willming received from her federal pension was not subject to the offset provisions of K.S.A. 44-501(f); thus, her award should only be offset for money actually received from Social Security— $39.81 per week from November 2019 to December 2020 and $40.59 per week

4

thereafter. The Board awarded Willming $84,647.27 in work disability plus any authorized medical expenses incurred, future medical expenses, and approved her counsel's attorney fees and expenses. The Hospital timely sought judicial review before this court. Additional facts are set forth as necessary.

ANALYSIS

The Hospital contends (1) the Board's determination of Willming's wage loss is not properly supported by the record and (2) the Board failed to properly offset Willming's federal pension benefits against her award.

*Standard of Review and Applicable Legal Principles*

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs our review of cases arising under the Workers Compensation Act, K.S.A. 44-501 et seq. K.S.A. 44-556(a). Our standard of review varies depending upon the issue raised. See K.S.A. 77-621 (defining and limiting scope of review of administrative decisions under KJRA). The KJRA sets forth several grounds upon which an appellate court may grant relief. See K.S.A. 77-621(c)(1)-(8). Relevant to the issues on appeal, K.S.A. 77-621(c)(4) provides for relief when "the agency has erroneously interpreted or applied the law." Further, K.S.A. 77-621(c)(7) provides for relief when "the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole." To the extent these issues require us to engage in statutory interpretation, they present questions of law subject to unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

Our review of questions of fact in a workers compensation case is limited to whether, when reviewing the record as a whole, the Board's findings of fact are supported

5

by substantial evidence, which is a question of law. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514, 154 P.3d 494 (2007). For purposes of the KJRA:

> "'[I]n light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 77-621(d).

When reviewing whether the Board's findings are supported by substantial evidence, "[w]e review the evidence in the light most favorable to the prevailing party and do not reweigh competing evidence or assess credibility of witnesses. Thus, we will uphold the Board's decision if it is supported by substantial evidence, even though there is other evidence in the record supporting contrary findings." *Saylor v. Westar Energy, Inc.*, 292 Kan. 610, 614, 256 P.3d 828 (2011). Substantial evidence is "'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.'" *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015). "The burden of proving the invalidity of agency action is on the party asserting invalidity." K.S.A. 77-621(a)(1).

*The Board Properly Determined Willming's Wage Loss*

The Hospital claims the Board failed to follow the statutory requirements of K.S.A. 44-510e(a)(2)(E) in determining Willming's wage loss. Specifically, the Hospital

argues the Board failed to make specific findings regarding the factors to be considered under K.S.A. 44-510e(a)(2)(E), which include, but are not limited to, "the injured worker's age, physical capabilities, education and training, prior experience, and availability of jobs in the open labor market." But the Hospital fails to acknowledge these factors were explicitly considered by Benjamin and Terrill. The Hospital does not convince us why the Board needed to set forth its own recitation of those same factors.

In support of its argument, the Hospital relies on *Tyler v. Goodyear Tire & Rubber Co.*, 43 Kan. App. 2d 386, 224 P.3d 1197 (2010). In *Tyler*, the Board found an injured worker's wage loss was the result of a change in his work schedule, not his work-related injuries. The *Tyler* panel found this causal relationship was inconsistent with the plain language of K.S.A. 44-510e(a) (Furse 2000), which, at that time, required no nexus between the worker's injuries and post-injury wage loss. 43 Kan. App. 2d at 391. The Hospital's reliance on *Tyler* is not persuasive. *Tyler* turned on the Board's legal error in interpreting a statute, and the Hospital fails to meaningfully explain how *Tyler* applies to undermine Willming's claim.

Willming correctly points out the Board is entitled to weigh the evidence and determine credibility, which it did here. See *Wimp v. American Highway Technology*, 51 Kan. App. 2d 1073, 1076, 360 P.3d 1100 (2015) ("The Board, not our court, makes the factual findings, so we do not weigh conflicting evidence except to determine whether the evidence supporting the Board's decision has been so undermined by cross-examination or other evidence that a reasonable person would not accept it as support of the Board's factual findings.").

Willming further points to *Rodriguez v. IBP, Inc.*, No. 85,679, 2001 WL 37132351, at *1-2 (Kan. App. 2001) (unpublished opinion), where another panel of this court held the Board did not err in averaging three physicians' opinions to determine a claimant's functional impairment. The same reasoning can be soundly applied here.

7

Benjamin and Terrill both considered Willming's age, physical capabilities, education, training, prior work experience, and availability of jobs in the open labor market. Given Benjamin's and Terrill's consideration of the appropriate statutory criteria, the Board did not err in weighing and relying on their opinions to arrive at its wage loss finding.

The Hospital further argues the Board erred in finding Terrill's and Benjamin's testimony equally credible. Specifically, the Hospital asserts because the Board found Willming was not fully disabled, it rejected Terrill's conclusion that Willming's wage loss was 100%. The Hospital argues this credibility finding is at odds with the Board's subsequent finding that Terrill's and Benjamin's opinions were equally credible. Accordingly, the Hospital asserts the Board's decision was not supported by substantial competent evidence.

Here, the Hospital is asking us to reweigh evidence, which we cannot do. *Saylor*, 292 Kan. at 614. But even considering this claim through the appropriate lens—whether the Board's finding is properly supported in light of the record as a whole—the Hospital's argument is unpersuasive. The Board found Terrill's and Benjamin's opinions *equally* credible, which is not the same as finding both opinions *fully* credible. The Board appropriately weighed the evidence and rejected Terrill's finding that Willming was fully disabled. But, as Willming points out, these are not mutually exclusive propositions. The Board could find Willming was not as disabled as Terrill believed but more disabled than Benjamin believed, which is exactly what it did here. Based on its averaging of the two opinions, the Board necessarily found Terrill overestimated the extent of Willming's disability to the same degree Benjamin underestimated it. Thus, the Board properly concluded Benjamin's and Terrill's opinions were equally credible insofar as they were equally and oppositely inaccurate. We find the Board's analysis is supported by substantial competent evidence.

8

The Hospital incidentally takes issue with the fact Willming was not terminated but resigned from her position. The Hospital does not argue the Board erred in determining Willming's resignation was involuntary based on her inability to perform her assigned tasks within the restrictions from her treating physicians. At best, this point is incidentally raised but not argued, and we deem it waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). In any event, the Board correctly noted other panels of this court have held an employee's resignation is not voluntary when, as a result of work-related injuries, the employee is unable to continue performing his or her assigned job duties. See *Eder v. Hendrick Toyota*, No. 114,824, 2016 WL 7324454, at *11 (Kan. App. 2016) (unpublished opinion). The record reflects Willming resigned because the work was causing her pain and she was concerned it would cause more damage to her hands.

The Board appropriately weighed the evidence and made credibility determinations; it did not err in relying on Terrill's testimony to the extent it believed it was credible. The Board properly calculated Willming's wage loss by averaging Terrill's and Benjamin's opinions because both opinions considered the appropriate statutory criteria. The Hospital fails to persuasively explain why the Board needed to reiterate the same factors already extensively set forth in the record to explain its decision.

*The Board Properly Reduced Willming's Award Based on Her Social Security Benefits*

The Hospital's final argument claims the Board erred in the amount offset for Willming's Social Security benefits. Specifically, the Hospital claims Willming's Social Security benefits were reduced as a result of her previous employment with the VA. The Hospital identifies Willming's federal pension program as FERS and asserts two-thirds of the money Willming receives thereunder should be considered as Social Security benefits based upon the unique interrelationship between FERS and Social Security.

9

This claim presents a straightforward question of statutory interpretation of K.S.A. 44-501(f), and our review is unlimited. *Nauheim*, 309 Kan. at 149. The most fundamental rule of statutory construction is the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to

"ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, [an appellate court] should not speculate about the legislative intent behind that clear language, and [it] should refrain from reading something into the statute that is not readily found in its words. [Citation omitted.]" *Montgomery v. Saleh*, 311 Kan. 649, 654-55, 466 P.3d 902 (2020).

As the Board recognized, the Hospital's argument is problematic because it is asking us to graft language into the statute not contained therein. K.S.A. 44-501(f) provides:

"If the employee receives, whether periodically or by lump sum, retirement benefits under the federal social security act or retirement benefits from any other retirement system, program, policy or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment. Where the employee elects to take retirement benefits in a lump sum, the lump sum payment shall be amortized at the rate of 4% per year over the employee's life expectancy to determine the weekly equivalent value of the benefits."

This plain language applies to money received as Social Security retirement benefits or money received under a pension plan *from the employer against whom the*

*workers compensation claim is being made*. Willming's federal pension is based on her prior employment with the VA; this is not a pension paid by the Hospital. Accordingly, any offset is only appropriate for money Willming receives through Social Security.

The Hospital relies on Benjamin's explanation that Social Security payments are drastically reduced for certain federal employees because two-thirds of the money that otherwise would have been paid through Social Security is instead paid through FERS. However, from our review of the record, we have been unable to determine under which federal pension plan Willming is receiving benefits. Willming referred to her retirement benefits from the VA as a civil service pension. In his deposition, Benjamin referred to the pension program as FERS but did not reference or submit any documentation reflecting the specifics of Willming's federal pension. In any event, we need not dwell on the point as the Hospital's argument is unpersuasive as a matter of law.

The Hospital claims $1,939.26 of Willming's monthly federal pension of $2,908.89 per month must be treated as Social Security income. Accordingly, the Hospital argues the proper offset for Social Security should be $447.52 per week prior to December 1, 2020, and $488.02 per week thereafter. The Board rejected this calculation as contrary to the plain language of K.S.A. 44-501(f). The statute provides for offset of money received from Social Security, not money paid by a federal pension plan. The Hospital is asking us to read language into the statute in order to offset something not provided for therein—pension payments from a different employer. We decline the Hospital's request.

The Hospital largely sidesteps the flaws in its proposed interpretation and application of the statute by arguing Benjamin's testimony was undisputed evidence which the Board ignored. This argument is unavailing. The Board's decision must be supported by substantial *competent* evidence. See *Casco*, 283 Kan. at 514. Even if uncontroverted, an expert opinion premised on an erroneous interpretation of the law

11

and/or facts not supported by the record is not competent evidence. That is, a legally erroneous opinion is not "evidence . . . a reasonable person might accept as sufficient to support a conclusion." *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007). Neither the Board nor this court are beholden to a party's or witness' subjective interpretation of the law. See *Nauheim*, 309 Kan. at 149 (statutory interpretation is question of law subject to unlimited review). The undisputed evidence reflects Willming was paid monthly Social Security retirement benefits of $175.90 beginning in November 2019, with an increase to $179.90 per month beginning in December 2020, from the Social Security Administration. The Board correctly recognized those monthly amounts to calculate the offset under K.S.A. 44-501(f).

Affirmed.